UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID A. JOHNSON,

                  Plaintiff,

   v.

CLARK COUNTY SHERIFF, et al.,

                  Defendants.

CASE NO. C23-5046 BHS

ORDER

This matter is before the Court on the motion for summary judgment filed by Defendants Clark County Sheriff, Sheriff's Deputy Shane Joachim, the Woodland Police Department, Chief of Police James Kelly, Officer Brent Murray, Cowlitz County, Clark County, and the City of Woodland. Dkt. 46. Because pro se Plaintiff David Johnson fails to raise a genuine issue of material fact in support of any of his claims, the motion is granted and the case is dismissed.

**I.  BACKGROUND**

In June 2021, Woodland Police Officer Brent Murray observed a vehicle being driven with a defective headlight and no license plate in Woodland, which is in Cowlitz County, Washington. Dkt. 47-1 at 37. Murray drove a marked patrol vehicle and

"signaled" for the driver to stop. *Id.* The driver continued to drive and subsequently stopped at a red traffic light. *Id.* Murray noticed that the vehicle's taillight on the right side did not work. *Id.* He also observed the driver look back at him through the rear-view mirror. *Id.* The traffic light turned green and the driver continued on. *Id.*

The driver stopped at the next red traffic light, and Murray activated his vehicle's emergency lights. Dkt. 47-1 at 37. The driver again looked back at Murray through the rear-view mirror and, when the traffic light turned green, continued to drive. *Id.* Murray then activated the siren. *Id.* The driver briefly pulled to the side of the road, but, without stopping, quickly pulled back onto the road and continued to drive. *Id.* The driver continued to drive under the speed limit while ignoring Murray's emergency lights and siren. *Id.* Murray followed the driver for more than 10 miles and into Clark County. *Id.*

A Clark County sheriff's deputy advised Murray via his radio that, approximately two years prior, "they had a similar incident with a similar vehicle and the driver claimed to be a sovereign citizen."[1] Dkt. 47-1 at 37. The sheriff's deputy "cautioned [Murray] that when they arrested him, the suspect resisted arrest and they had to fight him." *Id.* The sheriff's deputy identified that person as David Johnson and a resident of Yacolt, a city in Clark County. *Id.*

Clark County sheriff's deputies informed Murray that they would respond to the area to assist. Dkt. 47-1 at 37. Murray turned off the emergency lights and siren and follow the driver to Yacolt. Dkt. 47-1 at 37. Upon entering Yacolt, Murray noticed Clark

---

[1] Johnson denies that he identifies as a sovereign citizen. Dkt. 47-1 at 6; Dkt. 49 at 4.

1   County Sheriff's Deputy Shane Joachim "waiting for [him]." *Id.* Murray again activated

2   the emergency lights, but the driver did not stop and continued to drive under the speed

3   limit for about three blocks. *Id.*

4       The driver pulled into the driveway of a residence and parked. Dkt. 47-1 at 37.

5   Murray and Joachim parked their patrol vehicles and approached the driver's vehicle. *Id.*

6   The driver exited his vehicle, and Murray observed that the driver "was very large and

7   muscular." *Id.* Murray and Joachim informed the driver that he was under arrest. *Id.*

8   Murray grabbed the driver's right arm and Joachim grabbed his left arm. *Id.*; Dkt. 48 at 5.

9   The driver responded, "No I am not!" and "twisted out of [their] grasp and told [them] to

10  get off his property." Dkt. 47-1 at 37.

11      Murray and Joachim again informed the driver that he was under arrest. Dkt. 47-1

12  at 37. They attempted to grab the driver, but he "quickly pulled away from" them. *Id.*

13  Based on the driver's stature, Murray believed that "if [they] fought with him, someone

14  was going to get hurt." *Id.* Murray then announced "taser," pointed his taser at the driver,

15  and ordered the driver "to the ground." *Id.* The driver refused to comply with this

16  command and, instead, "said he was leaving and turned around." *Id.*

17      Murray activated his taser, and two probes struck the driver in the back before he

18  fell "softly" facedown onto the ground. Dkt. 47-1 at 38. The driver stated "OK, OK." *Id.*

19  Murray ordered the driver to place his arms behind his back while Joachim attempted to

20  place handcuffs on the driver. *Id.* The driver pulled his right arm away from Joachim and

21  refused to comply with Murray's commands. *Id.* The driver attempted to "turtle" his

22  hands underneath his chest, so Murray tasered him again. *Id.* Joachim successfully placed

1  handcuffs on the driver. *Id.*; Dkt. 48 at 5. A report of Murray's taser states that he

2  activated it three times: twice back-to-back for a period of 10 seconds in total and, eight

3  seconds later, again for a period of five seconds. Dkt. 47-1 at 102.

4      Murray requested emergency medical services. Dkt. 47-1 at 38. The driver stated

5  that "he was fine" and that he did not want or need an ambulance. *Id.* Murray informed

6  the driver that medical personnel would check his condition, but that the driver did not

7  have to go to the hospital if he did not want to. *Id.* Emergency medical personal arrived,

8  removed the taser probes from the driver's back, and offered to place a bandage over the

9  location where the probes had been. *Id.* The driver declined the bandage. *Id.*

10      The driver refused to tell Murray his name. Dkt. 47-1 at 38. Murray perceived the

11  driver as "exaggeratively pretend[ing] to not know who we were or why [we] were on his

12  property," repeatedly "asking why [Murray] tried to kill him." *Id.* The driver told Murray

13  that the driver "was not under arrest" and that *Murray* "was under arrest and he was

14  arresting [Murray]." *Id.* Murray read the driver "his rights" and the driver "refused to

15  answer if he understood his rights or not." *Id.* A Clark County sheriff's deputy then

16  confirmed that the driver was David Johnson. *Id.*

17      Murray arrested Johnson for failing to obey an officer in violation of RCW

18  46.61.022, a misdemeanor. Dkt. 47-1 at 39. Murray transported Johnson to the Cowlitz

19  County jail and issued Johnson notices of infraction for operating a vehicle with a

20  defective headlight, with a defective stop lamp, without a valid operator's license,

21  without current license plates, and with an expired vehicle license. *Id.* at 39. At the jail,

22  Murray saw that Johnson "had a small spot of road-rash on his forehead." *Id.* at 38.

1  Johnson asserts that his injury took approximately one to two weeks to heal. Dkt. 47-1 at

2  6.

3       Johnson was charged in Clark County District Court with one count of resisting

4  arrest in violation of RCW 9A.76.040. Dkt. 47-1 at 69. He ultimately pleaded guilty to

5  one count of disorderly conduct in violation of RCW 9A.84.030, a misdemeanor. *Id.* at

6  71. The court sentenced Johnson to one day of partial confinement on work program and

7  time served for two days of total confinement. *Id.*

8       Johnson sued in this Court, asserting 42 U.S.C. § 1983 claims for false arrest,

9  excessive force, and violations of his Fifth Amendment and Ninth Amendment rights.

10  Dkt. 27 at 30–31, 36. He also asserts state tort claims of "Gross Negligence and

11  Recklessness," intentional infliction of emotional distress, assault, battery, negligence per

12  se, false imprisonment, and "Willful and Wanton Negligent Hiring, Retention and Lack

13  of Supervision." *Id.* at 4, 34–44.

14       During his deposition, Johnson testified that he recalled being followed by a

15  Woodland Police Department vehicle the day he was arrested. Dkt. 47-1 at 7. He testified

16  that, at some point, he recalled seeing the vehicle's emergency lights and hearing the

17  vehicle's siren. *Id.* at 7, 9. Johnson stated that only after Murray issued the notices of

18  citations did he realize that his vehicle had a defective headlight and taillight. *Id.* at 7.

19  Johnson knew, however, that his vehicle did not have a license plate. *Id.* at 8. Johnson

20  refused to pull over because he "[d]idn't feel there was any reason that [he] had to." *Id.*

21  Johnson stated that he briefly pulled to the side of the road before returning to the road

22

1    "[t]o let [the police vehicle] go around [him]." *Id.* Johnson continued to drive for

2    approximately 30 minutes with Murray following him. *Id.* at 10.

3          Johnson recalled driving home, parking, and stepping out of his vehicle. Dkt. 47-1

4    at 10. Johnson testified that he then "ha[s] no memory for moments of time because that's

5    the point where Murray shot me in the back with his Taser gun." *Id.* Johnson recalled:

6          I just remember opening my car door and the next thing I know, I'm laying
           -- I was standing in my driveway next to my car door. I just opened it and
7          stepped out facing my garage. And then I have no memory. I just remember
           waking up, laying on my front porch in front of my door, handcuffed, face
8          on the . . . concrete.

9    *Id.*

          Johnson remembered being treated by medical personnel and Murray driving him
10
     to the Cowlitz County jail. Dkt. 47-1 at 11–12. Johnson believes that he was unlawfully
11
     seized in violation of the Fourth Amendment because "[n]o crime had been committed"
12
     and "[n]o warrant issued." *Id.* at 14. He believes that Murray used excessive force when
13
     he tasered Johnson and that Joachim used excessive force when he placed handcuffs on
14
     Johnson. *Id.* He also claims that Murray's conduct violated the Fourteenth Amendment
15
     because he "had no authority to be in Clark County or on [his] property" and "no legal
16
     reason or right to arrest [him] and shoot [him] in the back with a Taser gun." *Id.* at 16.
17
          Defendants move for summary judgment on each of Johnson's claims. Dkt. 46.
18
                                  **II.   DISCUSSION**
19
     **A.   Johnson's Fourth Amendment false arrest claim fails as a matter of law.**
20
          Johnson claims that "Defendants falsely imprisoned Plaintiff in that Defendants
21
     restrained Plaintiff, the restraint was intentional and the restrain was unlawful" because it
22

1    violated "[t]he 4th Amendment's guarantee against unreasonable seizure." Dkt. 27 at 36.

2    Defendants assert that this claim fails because Murray and Joachim had probable cause to

3    arrest Johnson for both failing to obey an officer in violation of RCW 46.61.022 (a

4    misdemeanor) and resisting arrest in violation of RCW 9A.76.040 (a misdemeanor). Dkt.

5    46 at 11–12. They also contend that this claim is barred by the Supreme Court's decision

6    in *Heck v. Humphrey*, 512 U.S. 477 (1994), because "a decision in Plaintiff's favor would

7    necessarily contradict his disorderly conduct conviction." *Id.* at 24–25. Johnson responds

8    that a fact issue exists concerning his false arrest claim because "[n]o crime had been

9    committed by the Plaintiff" and "Murray stated in his report . . . that I obeyed all traffic

10   laws." Dkt. 49 at 5.

11        Summary judgment is proper if the pleadings, the discovery and disclosure

12   materials on file, and any affidavits show that there is "no genuine dispute as to any

13   material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

14   P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence

15   in the light most favorable to the nonmoving party and draw all reasonable inferences in

16   that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986);

17   *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact

18   exists where there is sufficient evidence for a reasonable factfinder to find for the

19   nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence

20   presents a sufficient disagreement to require submission to a jury or whether it is so one-

21   sided that one party must prevail as a matter of law." *Id*. at 251–52.

22

1       The moving party bears the initial burden of showing that there is no evidence

2   which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*,

3   477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party

4   then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the

5   nonmoving party fails to establish the existence of a genuine issue of material fact, "the

6   moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

7   There is no requirement that the moving party negate elements of the non-movant's case.

8   *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met

9   its burden, the non-movant must then produce concrete evidence, without merely relying

10  on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477

11  U.S. at 248.

12      "To prevail on [a] § 1983 claim for false arrest and imprisonment, [the plaintiff]

13  would have to demonstrate that there was no probable cause to arrest him." *Cabrera v.

14  City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). However, when "a judgment

15  for [a plaintiff] on [a] § 1983 claim 'would necessarily imply the invalidity of his

16  conviction,' *Heck* would bar [the plaintiff] from bringing his cause of action until his

17  conviction was overturned." *Cabrera*, 159 F.3d at 380 (internal citation omitted) (quoting

18  *Heck*, 512 U.S. at 487).

19      Johnson was convicted of one count of disorderly conduct in relation to the facts

20  underlying his false arrest claim. Dkt. 47-1 at 71. Johnson presents no evidence that this

21  conviction was overturned. Although Johnson was convicted of disorderly conduct, it is

22  of no consequence that Murray and Joachim arrested him for a different offense: failing

1   to obey an officer.[2] *See District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018) ("[A]n

2   arrest is lawful if the officer had probable cause to arrest for any offense, not just the

3   offense cited at the time of arrest or booking."). On these facts, a finding that there was

4   no probable cause to support Johnson's arrest would "necessarily imply" that his

5   conviction was invalid. *See Cabrera*, 159 F.3d at 380. Under *Heck*, Johnson fails to state

6   a plausible false arrest claim.

7   　　Defendants' motion on Johnson's false arrest claim is **GRANTED**, and that claim

8   is **DISMISSED with prejudice**.

9   **B.　Johnson's Fourth Amendment and Fourteenth Amendment excessive force
    claims fail as a matter of law.**

10  　　Johnson claims that Murray and Joachim used "excessive force on Plaintiff

11  proximately causing a violation of Plaintiff's Fourth and Fourteenth Amendment rights

12  protecting against such unlawful seizure and excessive force" Dkt. 27 at 31. He alleges

13  that "[t]he very moment Murray shot me in my back with his Taser gun he . . . unlawfully

14  seized my body." *Id.* at 35. He also alleges that "[t]he very second Joachim placed

15  handcuffs on me he violated my Right to be free from unnecessary use of force and he

16  seized my body." *Id.*

17  　　Murray responds that his use of a taser was objectively reasonable because (1)

18  Johnson was resisting arrest and ignoring the officers' commands, (2) Murray knew that,

19  on a previous occasion, Johnson had also resisted arrest and refused to comply with

20  officers' commands, and (3) given Johnson's insubordination and stature, Murray

21  

22  　　[2] Dkt. 47-1 at 34–35

1    reasonably believed that the use of a taser was necessary to avoid risk of physical injury

2    to himself or Joachim. Dkt. 46 at 14. Joachim asserts that his act of handcuffing Johnson

3    was objectively reasonable and did not result in any injury to Johnson. *Id.* at 16. Murray

4    and Joachim also contend that they are qualifiedly immune from Johnson's excessive

5    force claims because Johnson fails to establish that they violated a clearly established

6    right. *Id.* at 27.

7         Johnson responds that a fact issue exists on his excessive force claims because

8    "Murray claims he unknowingly tased [sic] me a third time by **unintentional** discharge."

9    Dkt. 49 at 7. He asserts that "[n]o threatening actions from me were ever displayed by me

10   towards the public or police officers" and that "[t]he Defendants must show that I resisted

11   arrest or committed any violent or threatening behaviors." *Id.* at 8. He also asserts that

12   Murray's "training certification" had expired before he used the taser, and that Murray

13   violated numerous department policies. *Id.* at 8–9. He finally asserts that Murray's use of

14   a taser amounted to unconstitutionally deadly force. *Id.* at 7–9, 11–12

15        The Supreme Court has made clear that "*all* claims that law enforcement officers

16   have used excessive force—deadly or not—in the course of an arrest, investigatory stop,

17   or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and

18   its 'reasonableness' standard, rather than under a 'substantive due process' approach."

19   *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Court accordingly analyzes Johnson's

20   excessive force claim under the Fourth Amendment, and his Fourteenth Amendment

21   claim is **DISMISSED with prejudice**.

22

1   "Excessive force claims are founded on the Fourth Amendment right to be free

2   from unreasonable seizures of the person." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d

3   1110, 1115 (9th Cir. 2017) (citing U.S. CONST. amend. IV; *Graham v. Connor*, 490 U.S.

4   386, 394–95 (1989)). "The Fourth Amendment is implicated where an officer exceeds the

5   bounds of reasonable force in effecting an 'an arrest, investigatory stop, or other

6   seizure.'" *Shafer*, 868 F.3d at 1115–16 (quoting *Graham*, 490 U.S. at 395–96).

7       Where, as here, a government official raises the defense of qualified immunity, the

8   plaintiff must demonstrate that (1) "the facts a plaintiff has . . . shown . . . make out a

9   violation of a constitutional right," and (2) "the right at issue was 'clearly established' at

10  the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232

11  (2009). The qualified immunity doctrine "protect[s] officers from the sometimes 'hazy

12  border' between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 198

13  (2004) (parenthetically quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

14      Under the first step, courts "analyze excessive force claims according to the

15  constitutional touchstone of objective reasonableness, so [they] do not consider an

16  officer's subjective 'intent or motivation.'" *Shafer*, 868 F.3d at 1116 (quoting *Graham*,

17  490 U.S. at 397). Courts also "judge reasonableness of the force 'from the perspective of

18  a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Shafer*,

19  868 F.3d at 1116 (quoting *Graham*, 490 U.S. at 396). This is "because 'officers are often

20  forced to make split-second judgments—in circumstances that are tense, uncertain, and

21  rapidly evolving—about the amount of force that is necessary in a particular situation.'"

22  *Shafer*, 868 F.3d at 1116 (quoting *Graham*, 490 U.S. at 397).

1  "This determination requires [courts] to balance the 'nature and quality of the

2  intrusion on the individual's Fourth Amendment interests against the countervailing

3  governmental interests at stake.'" *Shafer*, 868 F.3d at 1116 (*Graham*, 490 U.S. at 396).

4  Courts consider "the facts and circumstances of each particular case, including the

5  severity of the crime at issue, whether the suspect poses an immediate threat to the safety

6  of the officers or others, and whether he is actively resisting arrest or attempting to evade

7  arrest by flight." *Id.* at 397. "[T]he most important single element of the three specified

8  factors" is "whether the suspect poses an immediate threat to the safety of the officers or

9  others." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994).

10  The crimes at issue here not just the traffic infractions committed by Johnson, but

11  also Johnson's failure to obey an officer in violation of RCW 46.61.022 and resisting

12  arrest in violation of RCW 9A.76.040. Having observed these misdemeanors, Murray and

13  Joachim were statutorily authorized to arrest Johnson. *See* RCW 10.31.100 ("A police

14  officer may arrest a person without a warrant for committing a misdemeanor or gross

15  misdemeanor only when the offense is committed in the presence of an officer.").

16  Murray and Joachim also reasonably believed that Johnson was resisting arrest.

17  Murray had observed Johnson refuse to pull over despite following Johnson for

18  approximately 30 minutes with his patrol vehicle's emergency lights and sirens activated.

19  *See* Dkt. 47-1 at 10. Johnson has no memory of what occurred after he parked and exited

20  his vehicle in his driveway and before "waking up" handcuffed. Dkt. 47-1 at 10, 18.

21  Murray recalls that he and Joachim grabbed Johnson's arms and informed him that he

22  was under arrest. *Id.* at 37. Johnson responded, "No I am not!" and "twisted out of [their]

grasp," telling them to "get off his property." *Id.* When Murray warned Johnson that he would use his taser unless Johnson got on the ground, Johnson refused to comply and "turned around," saying that he "was leaving." *Id.* Based on this unchallenged evidence, a reasonable officer at the scene would believe that Johnson attempted to evade arrest.

Murray also reasonably believed that Johnson posed a threat of harm. When Murray followed Johnson's vehicle, he learned from a Clark County sheriff's deputy that, during a prior "similar incident," Johnson had "resisted arrest and [the deputies] had to fight him." *Id.* The record is not clear as to whether—at this time—Murray knew any other details of this prior incident or what, exactly, the deputy meant by stating that they had to "fight" Johnson. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019) ("Only information known to the officer at the time the conduct occurred is relevant" to an excessive force claim under the Fourth Amendment).

Nevertheless, based on this information, it was objectively reasonable for Murray to believe that, on the prior occasion, Johnson physically resisted the deputies' efforts to arrest him. Furthermore, when Murray first saw Johnson exit his vehicle, Murray perceived Johnson and being "very large and muscular." *Id.* Considering Johnson's stature, noncompliance, and history of "fighting" other deputies during a similar incident, Murray reasonably believed that "if [they] fought with him, someone was going to get hurt." Dkt. 47-1 at 10.

Viewed in the light most favorable to Johnson, Murray's taser report indicates that Murray initially activated his taser two times back-to-back, for a period of 10 seconds in total. *Id.* at 102. Johnson then refused to comply with Murray's command to place his

arms behind his back and, instead, attempted to hide his hands underneath his chest. Dkt.
47-1 at 38. Murray accordingly activated his taser again for a period of five seconds, and
Joachim placed handcuffs on Johnson. *Id.* at 38, 102. The only injury suffered by Johnson
was "a small spot of road-rash on his forehead," *id.* at 38, which healed in one to two
weeks. *Id.* at 6.

Although officers "'need not avail themselves of the least intrusive means of
responding to an exigent situation'" and "'need only act within that range of conduct we
identify as reasonable,'" Johnson does not attempt to explain what lesser form of force
Murray should have used. *Hughes v. Kisela*, 841 F.3d 1081, 1087 (9th Cir. 2016), *rev'd
on other grounds*, *Kisela v. Hughes*, 584 U.S. 100 (2018) (quoting *Scott v. Henrich*, 39
F.3d 912, 915 (9th Cir. 1994)). Murray reasonably believed that attempting to restrain
Johnson without the use of a taser posed a greater risk of harm to Murray, Joachim, and
Johnson. Murray considered his options, and availed himself to what he reasonably
believed was the least-intrusive option. Under the Fourth Amendment, "police are
required to consider [w]hat other tactics if any were available, and whether there are
clear, reasonable and less intrusive alternatives to the force being contemplated." *Hughes*,
841 F.3d at 1087, *rev'd on other grounds*, *Kisela*, 584 U.S. 100 (internal quotation marks
omitted) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010)). Murray did
just that. Under these circumstances, Murray's use of a taser was reasonable as a matter
of law.

Johnson also fails to establish that Joachim's act of placing handcuffs on Johnson
was objectively unreasonable. Murray and Joachim had probable cause to arrest Johnson,

1   and Johnson attempted to evade arrest. Under these circumstances, Joachim's use of

2   handcuffs was objectively reasonable.

3         Johnson argues that Murray's statement that "he and Joachim each grabbed my

4   arms and told me I was under arrest" is "factually wrong" and that "Murray never gave

5   me any warning or verbal commands about anything." Dkt. 49 at 4–5. Johnson asserts

6   that he "never even had the opportunity to close [his] car door" and, "[a]t that time is

7   when Murray shot [him] in [his] back with [the] taser gun." *Id.* at 5. Defendants reply

8   that, because none of these assertions are supported by evidence, the Court should

9   disregard them. Dkt. 50 at 2 (citing Fed. R. Civ. P. 56(c)(1)(A), (3), (4)). Defendants

10   further assert that these statements should be disregarded because they contradict

11   Johnson's sworn deposition testimony. *Id.* at 3. They assert that Johnson's statements in

12   his briefing, if considered by the Court, violate the sham affidavit rule. *Id.* (citing *Yeager*

13   *v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

14         The Court agrees that Johnson's assertions in his briefing are improper. They are

15   not supported by evidence and, in turn, violate Federal Rule of Civil Procedure

16   56(c)(1)(A): "A party asserting that a fact cannot be or is genuinely disputed must

17   support the assertion by . . . citing to parts of materials in the record."

18         Even if the Court were to consider these assertions as having been made in an

19   affidavit or declaration, Johnson fails to demonstrate that he has personal knowledge of

20   the facts asserted. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to

21   support or oppose a motion must be made on personal knowledge" and "set out facts that

22   would be admissible in evidence"); Fed. R. Civ. P. 602 ("A witness may testify to a

1   matter only if evidence is introduced sufficient to support a finding that the witness has

2   personal knowledge of the matter."). Johnson testified under oath numerous times that he

3   does not recall anything after he exited his vehicle and before he "w[oke] up"

4   handcuffed. Dkt. 47-1 at 10. He testified, "I have no memory of the incident" and

5   "whatever went on between that moment, I have no memory of it." *Id.* at 18. Johnson

6   testified that he did not remember Joachim arriving, being tasered, or being handcuffed.

7   *Id.* Johnson does not explain how he personally knows that that Murray and Joachim

8   never grabbed his arms and informed him that he was under arrest, or that Murray never

9   announced a warning before tasering him. He does not, for example, claim that he is now

10  able to recall memories that he was previously unable to recall during his deposition.

11  Without such an explanation, Johnson's statements contradict his deposition testimony

12  and, in turn, would violate the sham affidavit rule. *See Yeager*, 693 F.3d at 1080 ("[A]

13  party cannot create an issue of fact by an affidavit contracting his prior deposition

14  testimony.").[3]

15        Murray's and Joachim's versions of the facts are unrebutted by Johnson and there

16  is no evidence in the record to reject these officers' recollections of the circumstances

17  surrounding his arrest. Viewing the evidence in the light most favorable to Johnson, he

18  physically resisted arrest, ignored Murray's warning that he would be tasered unless he

19

20  _____

21  [3] Defendants also move to strike the "Statement of Facts" section of Johnson's response
    brief. To the extent that Johnson's statements in his briefing contradict his sworn deposition
    testimony and are not otherwise supported by evidence, the Court disregards them. However, the

22  motion to strike is **DENIED**.

1   got on the ground, and refused to comply with Murray's command to place his hands

2   behind his back. Under these circumstances, Murray and Joachim acted reasonably.

3       Johnson also argues that Murray "was not in compliance with" numerous

4   departmental policies when he used his taser, and that Murray's "training certification

5   had expired one month prior to the date he shot [Johnson] with his taser gun." Dkt. 49 at

6   8–9. Johnson does not describe the content of these policies or provide copies of them.

7   He also does not provide any evidence that Murray's "training certification" had expired.

8   In any event, the mere violation of a police department's policies does not demonstrate

9   unconstitutional use of force. *See Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921,

10   930 (9th Cir. 2001) ("Whether the deputies violated a state law or an internal

11   departmental policy is not the focus of our inquiry."); *Backlund v. Barnhart*, 778 F.2d

12   1386, 1390 (9th Cir. 1985) (dismissing plaintiffs' § 1983 claim because they "failed to

13   show a violation of any *constitutional* right," despite violation of internal policy

14   (Emphasis added)).

15       Johnson finally asserts that Murray's use of a taser amounted to "deadly force."

16   Dkt. 49 at 7–9, 11–12. He fails to cite any authority to support this assertion. In fact, the

17   Ninth Circuit has explained that "tasers used in dart-mode 'constitute an intermediate,

18   significant level of force.'" *Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011)

19   (quoting *Bryan*, 630 F.3d at 826). The record is unclear as to whether Murray used his

20   taser in dart mode. In any event, the Court "need not decide this issue in order to assess

21   the reasonableness of the tasing." *Mattos*, 661 F.3d at 443. The Court need only consider

22

1   the reasonableness of Murray's conduct under the *Graham* factors. *See id.* Johnson fails

2   to establish a genuine issue of material fact under those factors.

3        For these reasons, Johnson fails to establish a fact issue in support of his excessive

4   force claim. Because he fails to "make out a violation of a constitutional right,"

5   Defendants are entitled to judgment as a matter of law. *Pearson v. Callahan*, 555 U.S. at

6   232. Their motion for summary judgment on Johnson's Fourth Amendment excessive

7   force claim is accordingly **GRANTED** and that claim is **DISMISSED with prejudice**.

8   **C.**    **Johnson's Fifth Amendment and Ninth Amendment claims fail as a matter of law.**

9        Johnson's complaint asserts that "[t]he defendants also violated Plaintiff's 5th and

10  9th Amendment Rights under the U.S. constitution." Dkt. 27 at 15. Defendants assert that

11  "there are no allegations regarding any Miranda[4] rights, nor was there a custodial

12  interrogation," that "[t]hese Defendants were not involved in any criminal proceedings

13  related to this incident," and that "[a]ny Fifth Amendment claim should therefore be

14  dismissed." Dkt. 46 at 18. They also assert that, because the Ninth Amendment "does not

15  enunciate a particular right but protects other fundamental rights not in the Constitution,"

16  Johnson "has not established a Ninth Amendment claim." *Id.* Johnson's response does

17  not address the Ninth Amendment claim, but Johnson asserts that "Officer Murray never

18  read me my rights." Dkt. 49 at 5.

19       Because Johnson fails to provide any factual or legal support for either of these

20  claims, they fail. In any event, a *Miranda* violation does not provide a basis for a § 1983

21

22      [4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

claim because *Miranda*'s "prophylactic purpose is served by the suppression at trial of statements obtained in violation of *Miranda* and by the application of that decision in other recognized contexts." *Vega v. Tekoh*, 597 U.S. 134, 151 (2022). Additionally, a § 1983 claim cannot be based on an alleged violation of the Ninth Amendment because "the ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim" and "[t]he Supreme Court has repeatedly voiced concern that a section 1983 claim be based on a specific constitutional guarantee." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986).

Defendants' summary judgment motion on Johnson's Fifth Amendment and Ninth Amendment claims is **GRANTED** and those claims are **DISMISSED with prejudice**.

**D.    Johnson's state tort claims against Murray and Joachim fail.**

Johnson asserts against Murray and Joachim state tort claims of gross negligence and recklessness, false imprisonment, intentional infliction of emotional distress, assault, battery, and negligence per se. Dkt. 27 at 33–41. Murray and Joachim contend that they are entitled to state immunity against these claims. Dkt. 46 at 27–28. They also argue that these claims fail on the merits. *Id.* at 18–23. Johnson responds that Murray and Joachim are not entitled to state immunity, but he fails to cite any state authority in support of this assertion. Dkt. 49 at 13. He also argues that a genuine issue of material fact exists concerning each of these claims. *Id.* at 10–12.

In Washington, "[a]n officer is entitled to state law qualified immunity where the officer (1) carries out a statutory duty, (2) according to procedures dictated to him by

1   statute and superiors, and (3) acts reasonably." *Gallegos v. Freeman*, 172 Wash. App.

2   616, 641, 291 P.3d 265, 277 (2013) (internal quotation marks omitted) (quoting

3   *McKinney v. City of Tukwila*, 103 Wn. App. 391, 407 (2000)).

4        When Murray and Joachim arrested Johnson, they acted pursuant to a statute

5   providing that "[a] police officer may arrest a person without a warrant for committing a

6   misdemeanor or gross misdemeanor only when the offense is committed in the presence

7   of an officer." RCW 10.31.100. They also acted in accordance with a statute stating that

8   "a peace officer may use physical force against a person to the extent necessary to"

9   "effect an arrest." RCW 10.120.020(1)(b). Finally, already explained, Murray's and

10  Joachim's use of force in effecting the arrest was reasonable. They are therefore

11  qualifiedly immune from Johnson's state law claims. Those claims are **DISMISSED**

12  **with prejudice**.

13  **E.    Johnson's negligent hiring, retention, and supervision claims fail.**

14       Johnson asserts claims of negligent hiring, retention, and supervision against the

15  Clark County Sheriff's Department and the Woodland Police Department. Dkt. 27 at 41–

16  44. These defendants move for summary judgment because "there is no allegation or

17  admission that" Murray or Joachim "were acting outside the course and scope of their

18  employment." Dkt. 46 at 23. To the contrary, they assert, Johnson "specifically alleges,

19  'The defendants were at all times acting under color of state law and in the course and

20  scope of their duties as an agent for the [C]ity of Woodland and Clark County.'" *Id.*

21  (quoting Dkt. 27 at 1–2).

22

1    Johnson advances no argument that the Woodland Police Department or the Clark

2    County Sheriff's Office negligently hired or retained Murray or Joachim, respectively.

3    "An employer negligently hires an employee when it knew or should have known that the

4    employee was unfit for the position." *Anderson v. Soap Lake Sch. Dist.*, 191 Wn.2d 343,

5    356 (2018). Likewise, "[n]egligent retention consists of . . . retaining the employee with

6    knowledge of his unfitness, or of failing to use reasonable care to discover it before . . .

7    retaining him." *Id.* at 358. Because Johnson presents no evidence or argument that

8    Murray or Joachim were unfit for their positions, either when they were hired or during

9    the course of their employment, Defendants' motion for summary judgment on Johnson's

10   negligent hiring and retention claims is **GRANTED** and those claims are **DISMISSED**

11   **with prejudice**.

12    Johnson's negligent supervision claim also fails. "[A]n action based on negligent

13   training and supervision 'is applicable *only* when the [employee] is acting outside the

14   scope of his employment.'" *Anderson v. Soap Lake Sch. Dist.*, 191 Wn.2d 343, 361

15   (2018) (quoting Restatement (Second) of Torts § 317 cmt. a)). Whether an employee

16   "was acting within the scope of employment depends on whether he . . . 'was fulfilling

17   his . . . job functions at the time he . . . engaged in the injurious conduct.'" *Anderson*, 191

18   Wn.2d at 361 (quoting *Robel v. Roundup Corp.*, 148 Wn.2d 35, 53 (2002)). "An

19   employee is not fulfilling his job functions when his conduct 'is different in kind from

20   that authorized, far beyond the authorized time or space limits, or too little actuated by a

21   purpose to serve the master.'" *Anderson*, 191 Wn.2d at 361–62 (internal quotation marks

22   omitted) (quoting *Robel*, 148 Wn.2d at 53).

1    Johnson contends that Murray acted outside the scope of his employment "when

2    he entered Clark County" and that both Murray and Joachim acted outside the scopes of

3    their employment when they were "unlawfully on my private property." Dkt. 49 at 12

4    (RCW 10.93.070). The cited statute enumerates the circumstances under which a peace

5    officer "may enforce the traffic or criminal laws of this state throughout the territorial

6    bounds of this state." RCW 10.93.070. One such circumstance is "[w]hen the officer is in

7    fresh pursuant, as defined in RCW 10.93.120." *Id.* That statute provides that "[a]ny peace

8    officer who has authority under Washington law to make an arrest may proceed in fresh

9    pursuit of a person . . . who is reasonably believed to have committed a violation of

10   traffic or criminal laws." RCW 10.93.120(1).

11   When Murray pursued Johnson into Clark County, Murray had already observed

12   Johnson driving a vehicle with a defective headlight and taillight and without a license

13   plate. He also observed Johnson refuse to pull over despite having signaled for Johnson

14   to do so. Murray accordingly acted within the scope of his employment when he

15   continued to pursue Johnson into Clark County. Furthermore, both Murray and Joachim

16   acted within the scopes of their employment when they arrested Johnson on his private

17   property. Johnson's clam for negligent supervision is therefore **DISMISSED with**

18   **prejudice**.[5]

19

20   _____

21   [5] Defendants also assert that Johnson's *Monell* claim fails to the extent that he asserts
     one. Dkt. 46 at 28–30. Johnson's complaint does not clearly state a *Monell* claim, and his
     response brief does not reference one. *See generally* Dkts. 27, 49. The Court accordingly

22   assumes that Johnson does not advance such a claim.

1

### III.  ORDER

2      Therefore, it is hereby **ORDERED** that Defendants' motion for summary

3  judgment, Dkt. 46, is **GRANTED**. All of Johnson's claims are **DISMISSED with**

4  **prejudice**.

5      The Clerk shall enter a **JUDGMENT** and close the case.

6      Dated this 30th day of April, 2024.

7

8

9  _____

10     BENJAMIN H. SETTLE
      United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22